UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

SHAWN MARSHALL,

   Plaintiff,

  v.             CAUSE NO. 3:22-CV-285-JD-JEM

J. BAKER,

   Defendant.

OPINION AND ORDER

Shawn Marshall, a prisoner without a lawyer, is proceeding in this case against Officer Jessica Baker "in her individual capacity for compensatory and punitive damages for using excessive force when she pepper sprayed him in the back and chased him to his cell while continuing to spray him at the Miami Correctional Facility on February 2, 2022, in violation of the Eighth Amendment[.]" ECF 9 at 3. Officer Baker filed a motion for summary judgment. ECF 99. Marshall filed a response, and Officer Baker filed a reply. ECF 104, 105, 108. The summary judgment motion is now fully briefed and ripe for ruling.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Federal Rule of Civil Procedure 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable [factfinder] could [find] for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable

to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003). A party opposing a properly supported summary judgment motion may not rely merely on allegations or denials in its own pleading but must "marshal and present the court with the evidence she contends will prove her case." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010).

The Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. *Whitley v. Albers*, 475 U.S. 312, 319 (1986). In order to survive summary judgment, a plaintiff must put forth evidence that "support[s] a reliable inference of wantonness in the infliction of pain." *Id.* at 322. The core requirement for an excessive force claim is that the defendant "used force not in a good-faith effort to maintain or restore discipline, but maliciously and sadistically to cause harm." *Hendrickson v. Cooper*, 589 F.3d 887, 890 (7th Cir. 2009). In determining whether the intent was malicious, relevant factors include how much force was needed versus how much was actually used; the extent of injury inflicted; whether the force was needed because of a risk to someone's safety; and whether the officers made efforts to limit the severity of the force. *McCottrell v. White*, 933 F.3d 651, 663 (7th Cir. 2019). Oleoresin capsicum ("OC") spray "can be used in limited quantities when reasonably necessary to subdue or maintain control over an inmate," but violates the Eighth Amendment "if it is used 'in quantities greater than necessary or for the sole purpose of punishment or the infliction of pain.'" *Musgrove v. Detella*, 74 F. App'x 641, 646 (7th Cir. 2003).

Officer Baker provides Marshall's deposition testimony and surveillance footage of the incident, which show the following facts: On February 2, 2022, Marshall's cellhouse was on lockdown and inmates were meant to be in their cells. ECF 99-1 at 27-28. Marshall's cell was located on the second floor of the cellhouse, which could be accessed via two sets of stairs. ECF 103. Marshall was in his cell when another inmate yelled out to him and asked to borrow a pen. ECF 99-1 at 11. Marshall, who was able to leave his cell because his door was broken, left his cell and brought the inmate a pen. *Id.* From the control booth, Sgt. Carter signaled Marshall to go back to his cell, so Marshall began heading back to his cell. *Id.* at 11-12. At that point, Officer Baker approached the control booth window and asked Marshall what he was doing out of his cell. *Id.* at 14. Marshall tried to explain to Officer Baker that his door was broken and he was bringing a pen to another inmate, but Officer Baker began screaming at him and stated she was coming down out of the control booth. *Id.* Marshall walked down the stairs to the first floor of the cellhouse to talk with Officer Baker at the front door and explain to her that his cell door was broken and that he'd been heading back to his cell when she'd started screaming at him. ECF 103; ECF 104 at 2. Officer Baker came down from the control booth, entered the cellhouse, approached Marshall, and told him to return to his cell. ECF 99-1 at 15. Marshall initially complied with this order and began climbing the stairs to the second floor. *Id.* Officer Baker told him to "hurry up," at which point Marshall turned back and told Officer Baker "I'm going to take the long way." *Id.* Marshall began walking across the cellhouse to the opposite set of stairs, which also led to his cell. *Id.* 15-16. Officer Baker walked behind Marshall across the cellhouse and removed a

3

cannister of OC spray from her belt. ECF 103. While Marshall was approaching the second set of stairs, another inmate warned him that Officer Baker was about to spray him. ECF 99-1 at 18. Marshall turned around to look at Officer Baker and she sprayed him in the face for three seconds. *Id.*; ECF 70 at 3. Marshall ran up the stairs and back into his cell, and Officer Baker came and locked his cell door. ECF 99-1 at 18-19. Because neither party disputes these facts, the court accepts them as undisputed.

Here, while it's a close call, a reasonable jury could conclude Officer Baker used excessive force against Marshall. It's undisputed Marshall offered at least some resistance to Officer Baker's order to return to his cell by opting to take the "long way" to his cell and walking across the cellhouse to the other set of stairs. But once Marshall began walking to the other set of stairs, there's no evidence Officer Baker gave him any orders or instructions that he refused to follow. Rather, the surveillance footage shows Marshall is walking calmly across the cellhouse to the other set of stairs with Officer Baker walking behind him when Officer Baker removes her canister of OC spray, and Officer Baker begins spraying him from behind the moment he turns around to look at her. Officer Baker asserts she sprayed Marshall because he was being combative, cursing, and turned to "square up" with her (ECF 70 at 2), while Marshall asserts he was warned Officer Baker was about to spray him and merely turned around to look at her when she began spraying him from behind (ECF 99-1 at 18). The surveillance footage seems to support Marshall's version of events, and does not show Marshall turn around to "square up" with Officer Baker. ECF 103. Moreover, the surveillance footage shows Officer Baker began spraying Marshall as soon as he turned around to look at

4

her, and there's no evidence Officer Baker ever gave Marshall any warning that she intended to use OC spray. *See Lewis v. Downey*, 581 F.3d 467, 479 (7th Cir. 2009) (force "including mace and tear gas . . . should generally follow adequate warnings"); *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir. 1984) (the use of OC spray "in small amounts may be a necessary prison technique if a prisoner refuses *after adequate warnings*" to comply with an order) (emphasis added). Construing these facts in the light most favorable to Marshall, a reasonable jury could balance the *McCottrell* factors in his favor, concluding that: (1) no force was needed, as Marshall was walking away from Officer Baker and in the direction of his cell; (2) deploying a three-second burst of OC spray into Marshall's face caused him some level of injury; (3) the force was not needed because of a risk to someone's safety; and (4) Officer Baker made no effort to limit the severity of the force. *See McCottrell*, 933 F.3d at 663. Therefore, because a reasonable jury could conclude Officer Baker sprayed Marshall to cause him harm rather than to restore order, summary judgment must be denied on this claim.

For these reasons, the court DENIES Officer Baker's motion for summary judgment (ECF 99).

SO ORDERED on February 25, 2025

/s/JON E. DEGUILIO
JUDGE
UNITED STATES DISTRICT COURT

5